Opinion
JENKINS, J.
—This is an appeal from a juvenile court order denying a request by defendant C.B. (minor) to expunge his DNA samples from the state’s database following the juvenile court’s grant of his simultaneous request to redesignate his admitted felony offense as a misdemeanor. Minor brought these requests under Penal Code section 1170.18, a measure enacted following passage of Proposition 47, the Safe Neighborhoods and Schools Act, which reduced the classification of certain crimes from felony to misdemeanor.[1] According to minor, his DNA samples should be expunged because, had his offense been classified as a misdemeanor at the time he *1116 admitted committing it, the juvenile court would have, in the first instance, lacked authority to order him to submit the samples.
However, as explained below, Proposition 47 construed in conjunction with the DNA and Forensic Identification Database and Data Bank Act of 1998 (DNA Database Act), section 295 et seq., supports the juvenile court’s decision to deny minor’s expungement request in this case. Moreover, and confirming this conclusion, our Legislature recently enacted Assembly Bill No. 1492 (2015-2016 Reg. Sess.) (Assembly Bill No. 1492), which clarifies that, pursuant to section 299, a trial court is not authorized to order expungement of a defendant’s DNA sample when granting relief under section 1170.18 to redesignate a felony offense as a misdemeanor. Accordingly, we affirm the juvenile court’s order.
FACTUAL AND PROCEDURAL BACKGROUND
On September 20, 2013, a petition was filed pursuant to Welfare and Institutions Code section 602, alleging that minor committed second degree robbery in violation of Penal Code sections 211 and 212.5 (count one), and first degree residential burglary in violation of sections 459 and 460, subdivision (a) (count two). This petition was amended on October 1, 2013, to add allegations that minor also committed felony grand theft from the person (§ 487, subd. (c)) (count three), and misdemeanor burglary (§§ 459, 460, subd. (a)) (count four).[2] On the same date, minor admitted the amended allegations (counts three and four) and the remaining allegations (counts one and two) were dismissed.
On October 15, 2013, the juvenile court adjudged minor a ward of the court with no termination date, ordered his out-of-home placement and, among other things, ordered him to submit DNA samples for the state DNA database.
On July 6, 2015, minor filed a petition for relief under section 1170.18, requesting that his felony grand theft adjudication be redesignated as a misdemeanor, that the order requiring submission of DNA samples be vacated, and that his DNA samples be expunged from the state DNA database. Following a hearing, on July 21, 2015, the juvenile court granted minor’s request to redesignate his felony offense as a misdemeanor, but denied his requests to vacate the order to submit DNA samples and to *1117 expunge his samples from the state DNA database. On September 14, 2015, minor filed a timely notice of appeal of this order.[3]
DISCUSSION
Minor raises one argument on appeal—to wit, that the juvenile court misconstrued Proposition 47 when finding that he was not entitled to have his DNA samples expunged from the state database after reclassifying his felony offense as a misdemeanor. The standard of review is not in dispute.
We review de novo questions of statutory or voter initiative interpretation. (Evangelatos v. Superior Court (1988) 44 Cal.3d 1188, 1212 [246 Cal.Rptr. 629, 753 P.2d 585] [rules of statutory interpretation apply to voter initiatives]; Argaman v. Ratan (1999) 73 Cal.App.4th 1173, 1176 [86 Cal.Rptr.2d 917].) The fundamental rule of statutory (or voter initiative) construction is that we must ascertain the intent of the drafters so as to effectuate the purpose of the law. (Preston v. State Bd. of Equalization (2001) 25 Cal.4th 197, 213 [105 Cal.Rptr.2d 407, 19 P.3d 1148].) “To determine the intent of legislation, we first consult the words themselves, giving them their usual and ordinary meaning.” (DaFonte v. Up-Right, Inc. (1992) 2 Cal.4th 593, 601 [7 Cal.Rptr.2d 238, 828 P.2d 140].) “We do not, however, consider the statutory language in isolation; rather, we look to the entire substance of the statutes in order to determine their scope and purposes. [Citation.] That is, we construe the words in question in context, keeping in mind the statutes’ nature and obvious purposes. [Citation.] We must harmonize the various parts of the enactments by considering them in the context of the statutory frame work as a whole. [Citation.] If the statutory language is unambiguous, then its plain meaning controls. If, however, the language supports more than one reasonable construction, then we may look to extrinsic aids, including the ostensible objects to be achieved and the legislative history.” (People v. Cole (2006) 38 Cal.4th 964, 975 [44 Cal.Rptr.3d 261, 135 P.3d 669].)
In this case, minor contends proper interpretation of Proposition 47 requires a trial court to expunge DNA samples submitted by a criminal defendant (including a juvenile) whose offense is reclassified from a felony to a misdemeanor pursuant to section 1170.18. Proposition 47, as mentioned above, “ ‘reduces penalties for certain offenders convicted of nonserious and nonviolent property and drug crimes’ and ‘allows certain offenders who have been previously convicted of such crimes to apply for reduced sentences.’ (Voter Information Guide, Gen. Elec. (Nov. 4, 2014) analysis of Prop. 47 by Legis. Analyst, p. 35 (Ballot Pamphlet).) One of those ‘nonserious and *1118 nonviolent property and drug crimes’ is shoplifting, so long as the value of the stolen property is less than $950. (See Ballot Pamphlet, supra, text of Prop. 47, §5, p. 71.)” (In re J.C. (2016) 246 Cal.App.4th 1462, 1469 [201 Cal.Rptr.3d 731].) Minor, relying on a recent decision from the Court of Appeal, Fourth District, Alejandro N. v. Superior Court (2015) 238 Cal.App.4th 1209 [189 Cal.Rptr.3d 907] (Alejandro), contends the juvenile court was required under Proposition 47 to grant his request to expunge his DNA record because, once his crime was reclassified as a misdemeanor, it was no longer a ‘“qualifying offense” for purposes of the DNA Database Act. (See § 296, subd. (a).)
The People, to the contrary, contend, first, that Alejandro was wrongly decided and, second, that, even if correctly decided when published, Alejandro is no longer good law because, in enacting Assembly Bill No. 1492, the Legislature made clear that section 1170.18, properly read, does not authorize a trial court to expunge a defendant’s DNA sample when granting a petition to redesignate the qualifying offense from felony to misdemeanor. We agree with the People’s latter point and, thus, need not directly address the wisdom of Alejandro.
Turning first to the relevant statutory framework, section 1170.18 provides a procedure by which persons, like minor, found to have committed a felony, yet ‘“who would have been guilty of a misdemeanor under [Proposition 47]” had it been in effect at the time of their offense, may request redesignation of the offense from felony to misdemeanor. (§ 1170.18, subd. (a).) Relevant here, section 1170.18, subdivision (1), provides that a person who has ‘“completed his or her sentence for a conviction, whether by trial or plea, of a felony or felonies who would have been guilty of a misdemeanor under this act had this act been in effect at the time of the offense, may file an application before the trial court that entered the judgment of conviction in his or her case to have the felony conviction or convictions designated as misdemeanors.” Further, where the section 1170.18 applicant has satisfied the criteria in subdivision (1), the trial court ‘“shall designate the felony offense or offenses as a misdemeanor.” (§ 1170.18, subd. (g).)
There is no dispute in this case that minor satisfied the criteria in section 1170.18, subdivision (g), such that the juvenile court was required to (and did) redesignate his offense as a misdemeanor. The dispute, rather, centers around whether the juvenile court was required, in light of this redesignation, to order expungement of minor’s DNA samples from the state database pursuant to section 299, the statute governing DNA record expungement. Part of the DNA Database Act, section 299 was amended in 2004 through passage of Proposition 69, the DNA Fingerprint, Unsolved Crime and Innocence Protection Act, which “substantially expanded the range of persons *1119 who must submit DNA samples to the state’s forensic identification databank.” (Good v. Superior Court (2008) 158 Cal.App.4th 1494, 1498 [71 Cal.Rptr.3d 125].) Persons qualifying under this act for submission of DNA samples include any person, including any juvenile, who is convicted of or pleads guilty or no contest to any felony offense, or is found not guilty by reason of insanity of any felony offense, or any juvenile who is adjudicated under section 602 of the Welfare and Institutions Code for committing any felony offense; any adult person arrested for or charged with one of the enumerated felony offenses; any person, including any juvenile, required to register under section 290 or 457.1 because of the commission of, or the attempt to commit, a felony or misdemeanor offense; or any person, including any juvenile, who is housed in a mental health facility or sex offender treatment program after referral to such facility or program by a court after being charged with any felony offense. (§ 296, subd. (a).) The DNA submission requirements ‘“shall apply to all qualifying persons regardless of sentence imposed . . . and regardless of disposition rendered or placement made in the case of juvenile who is found to have committed any felony offense . . . .” (§ 296, subd. (b), italics added.)
Under section 299, a person whose DNA profile has been included in the state data bank ‘“shall have his or her DNA specimen and sample destroyed and searchable database profile expunged from the databank program ... if the person has no past or present offense or pending charge which qualifies that person for inclusion within the state’s DNA and Forensic Identification Database and Databank Program and there otherwise is no legal basis for retaining the specimen or sample or searchable profile.” (§ 299, subd. (a).) Further, under subdivision (f) of this statute, ‘“[n]oWithstanding any other law," a judge is barred from relieving a person of his or her administrative duty to submit DNA pursuant to this chapter if the person has been found guilty or was adjudicated a ward of the court for a qualifying offense under section 296, subdivision (a), or pleaded no contest to one of these qualifying offenses. (§ 299, subd. (f), italics added.)
This provision, as it read at the time of minor’s petition for relief, set forth a nonexhaustive list of three statutes pursuant to which a judge is prohibited from relieving a person of his or her duty to submit DNA for the state forensic identification DNA database—to wit, sections 17, 1203.4 and 1203.4a. (§ 299, former subd. (f).) Each of these three enumerated statutes is similar to section 1170.18 in that it provides postconviction relief from punishment or penalties to qualifying defendants by, for example, reclassifying a felony offense as a misdemeanor, or dismissing the information entirely upon successful completion of a probationary term. (See §§17 [authorizing a trial court, in its discretion, to treat a qualifying offense as either a felony or a misdemeanor], 1203.4, subd. (a)(1) [authorizing a trial court, in certain cases, to set aside a guilty verdict and ‘“dismiss the accusations or information *1120 against the defendant,” thereby releasing the defendant “from all penalties and disabilities resulting from the offense”], 1203.4a, subd. (a) [authorizing a trial court to, among other things, set aside a guilty verdict and dismiss the information against a misdemeanant who was not granted probation, has served his sentence, has not been charged with or convicted of a subsequent crime, and has, since judgment, lived “an honest and upright life”].)
In October 2015, Assembly Bill No. 1492 was signed by the Governor. Among other things, it amended section 299, subdivision (1) to include section 1170.18 in the nonexhaustive list of statutes that do not authorize a judge to relieve a person of his or her administrative duty to provide DNA. Thus, effective January 1, 2016, this provision reads: “Notwithstanding any other law, including Sections 17, 1170.18, 1203.4, and 1203.4a, a judge is not authorized to relieve a person of the separate administrative duty to provide . . . samples . . . required by this chapter if a person . . . was adjudicated a ward of the court by a trier of fact of a qualifying offense as defined in subdivision (a) of Section 296.”[4] (§ 299, subd. (1), italics added.)
Notwithstanding the former or amended version of section 299, subdivision (1), minor contends a criminal defendant’s right to expungement of DNA records is triggered by a court’s redesignation of a criminal offense under Proposition 47 by way of another statute, section 1170.18, subdivision (k), which states: “Any felony conviction that is . . . designated as a misdemeanor under subdivision (g) shall be considered a misdemeanor for all purposes, except that such resentencing shall not permit that person to own, possess, or have in his or her custody or control any firearm or prevent his or her conviction [for being a felon in possession of a firearm].” (§ 1170.18, subd. (k), italics added.) According to minor, this statutory command that his offense be considered a misdemeanor “for all purposes” requires expungement of his DNA samples because, under California law, juvenile delinquents are not required to submit DNA unless they are found to have committed a felony. Minor’s argument finds support in Alejandro, which held that a felony redesignated a misdemeanor pursuant to section 1170.18 “no longer qualifies as an offense permitting DNA collection” and, thus, is “outside the matters contemplated by the Penal Code DNA expungement statute.”[5] (Alejandro, supra, 238 Cal.App.4th at p. 1229, italics omitted.)
*1121 We reject minor’s analysis on several grounds. First, as the People (and the juvenile court) have noted, Proposition 47 nowhere mentions DNA expungement. Rather, it is completely silent with respect to the state-maintained DNA data bank. As such, we question minor’s interpretation of Proposition 47 as requiring expungement whenever a court grants relief to a criminal defendant under section 1170.18. (See Hampton v. County of San Diego (2015) 62 Cal.4th 340, 350 [195 Cal.Rptr.3d 773, 362 P.3d 417] [courts are not “[o]rdinarily . . . free to add text to the language selected by the Legislature”].)
Further, the DNA sample submission requirement under the DNA Database Act does not necessarily hinge on whether a person is convicted of a felony or misdemeanor. Rather, under the relevant statutory language, the act’s triggering point is when “[a]ny person, including any juvenile, ... is convicted of or pleads guilty or no contest to any felony offense.” (§ 296, subd. (a)(1), italics added.) In addition, the act does not apply only to convicted felons, but extends to several categories of misdemeanants, including those required to register with law enforcement as sex offenders or arsonists (see § 296, subd. (a)(3)), a fact reflective of the measure’s administrative—and nonpunitive—design of creating a state data bank to ‘“to assist in the accurate identification of criminal offenders” (§ 295, subd. (d); see also § 295, subd. (b)(2) [“It is the intent of the people of the State of California, in order to further the purposes of [the act], to require DNA and forensic identification data bank samples from all persons, including juveniles, for the felony and misdemeanor offenses described in [section 296, subdivision (a)]” (italics added)]; Good v. Superior Court, supra, 158 Cal.App.4th at p. 1508 [“Proposition 69, immediately effective, listed felon and misdemeanant registrants as among those who qualified for DNA sampling. The requirement is not punitive, does not involve concepts of retroactivity or ex post facto implications, but is confined to a simple administrative identifying procedure akin to fingerprinting or keeping one’s whereabouts known to law enforcement.”]; People v. Travis (2006) 139 Cal.App.4th 1271, 1295 [44 Cal.Rptr.3d 177] [DNA collection is “nonpenal”]). We thus find without legal support minor’s assumption that reclassification of the offense underlying a conviction from a felony to a misdemeanor, in and of itself, triggers the right of a criminal defendant to have his or her DNA records expunged. (See Taxpayers to Limit Campaign Spending v. Fair Pol. Practices Com. (1990) 51 Cal.3d 744, 764 [274 Cal.Rptr. 787, 799 P.2d 1220] [when interpreting statutory language, courts must try to “reconcile or harmonize conflicting statutory provisions in an effort to give effect to all provisions if it is possible”].)
Indeed, and to the contrary, the DNA Database Act expressly limits the right to seek expungement to persons with “no past or present qualifying offense” whose cases fall within one of four legal categories: (1) following arrest no accusatory pleading is filed for prosecution or a qualifying charge is *1122 dismissed prior to adjudication; (2) the qualifying conviction has been reversed and the case dismissed; (3) the defendant has been found factually innocent; or (4) the defendant has been found not guilty or acquitted of the qualifying offense. (§ 299, subd. (b)(1)—(4).) Here, minor, who admitted committing the qualifying offense, falls within none of the identified categories.
In addition, we find persuasive the decision relied upon below by the juvenile court, Coffey v. Superior Court (2005) 129 Cal.App.4th 809 [29 Cal.Rptr.3d 59] (Coffey), which addressed whether the defendant, who pled guilty to a “wobbler” offense as a felony, was entitled to expungement of his DNA sample after the court reduced the charge pursuant to section 17, the so-called “wobbler” statute, and sentenced him to a misdemeanor.[6] There, as here, the defendant claimed a right to expungement on the ground that “DNA sampling is not required or authorized for a misdemeanor offense.” (Coffey, at p. 818.) The defendant relied upon subdivision (b) of section 17, which reads: “When a crime is punishable, in the discretion of the court, either by imprisonment in the state prison ... or by fine or imprisonment in the county jail, it is a misdemeanor for all purposes under the following circumstances: [¶] (1) After a judgment imposing a punishment other than imprisonment in the state prison.” (Italics added.) Thus, as the Coffey court noted, under this provision, “if a judge sentences the defendant to a misdemeanor punishment, the defendant’s crime becomes a misdemeanor.” (Coffey, at p. 818, fn. 7.)
The Coffey court nonetheless rejected the defendant’s argument that his offense should be treated as a misdemeanor for purposes of DNA record expungement. The court reasoned that, “for purposes of the DNA Database Act, Coffey was convicted of a felony when he pled guilty to a wobbler offense as a felony. He was therefore subject to the DNA Database Act when his DNA samples were taken, and the collection of the samples was lawful [under section 296] .... Because the samples were lawfully collected, there is no constitutional right to their return.” (Coffey, supra, 129 Cal.App.4th at p. 823.)
According to the People, this analysis in Coffey resonates here, in that, like a felony reclassified as a misdemeanor under section 17, a felony reclassified as a misdemeanor under section 1170.18 remains a qualifying offense for purposes of the administrative duties set out in the DNA Database Act, such that the offender is not eligible for expungement on the basis of the reclassification. Minor, in turn, insists section 17 is distinct from section 1170.18 and, thus, irrelevant to the issue raised herein. He reasons that, when an offense is reduced to a misdemeanor under section 17, the offense is *1123 deemed a misdemeanor for all purposes only going forward, yet when, as here, an offense is reclassified as a misdemeanor under section 1170.18, it is deemed a misdemeanor for all purposes, going forward and retroactively.
We agree with the People that Coffey is instructive here. As aptly explained by our colleagues in Division One of this District when recently addressing the identical legal issue: “Prior to the addition of section 1170.18 by Bill No. 1492, section 299(f) referred to sections 17, 1203.4, and 1203.4a. Section 17 governs ‘wobbler’ offenses, which are offenses that can be treated as felonies or misdemeanors in the discretion of the sentencing court. ([People v.] Lynall [(2015)] 233 Cal.App.4th 1102, 1108 [183 Cal.Rptr.3d 129].) Subdivision (b) of section 17 dictates ‘[w]hen’ a wobbler is treated as a misdemeanor, including after a defendant has been sentenced to a punishment other than prison (id., subd. (b)(1)), when a court declares a wobbler a misdemeanor upon granting probation (id., subd. (b)(3)), and when the prosecutor designates the crime as such in a charging document (id., subd. (b)(5)). In addition, under subdivision (c) of section 17, if a juvenile is committed to the Division of Juvenile Justice on the basis of a wobbler conviction, the violation is ‘thereafter . . . deemed a misdemeanor for all purposes’ following his or her discharge. Sections 1203.4 and 1203.4a govern the dismissal of charges following a successful completion of probation. (See, e.g., Doe v. Harris (2013) 57 Cal.4th 64, 72-73 [158 Cal.Rptr.3d 290, 302 P.3d 598].) These statutes have one thing in common. Their application generally results in the reduction of a felony conviction suffered by a defendant to something less serious—either a misdemeanor under section 17 or, in the case of sections 1203.4 and 1203.4a, dismissal altogether. The felony conviction necessarily required provision of a DNA sample, but the defendant would not have been required to provide a sample had the conviction been designated a misdemeanor from the outset or if there had been no criminal charges at all. The unmistakable implication of the reference to these statutes in section 299(f) is that the section was intended to prohibit trial courts, when reducing or dismissing charges pursuant to the listed statutes, from cdso expunging the DNA record given in connection with the original felony conviction.” (In re J.C., supra, 246 Cal.App.4th at pp. 1472-1474, fn. omitted & italics added.)
Our colleagues went on to note that a conviction for a wobbler offense charged as a felony has “traditionally been regarded as a felony until the point in time at which the trial court’s sentencing decision converts it to a misdemeanor,” and is only deemed a misdemeanor for all purposes following the decision. (In re J.C., supra, 246 Cal.App.4th at p. 1479.) Thus, “[i]f redesignation under section 1170.18 is similarly analogized to the treatment of wobbler offenses, the redesignation of a felony conviction would not justify DNA record expungement. Under section 299, subdivision (b), a person is entitled to expungement of his or her DNA record only ‘if the *1124 person has no past or present offense or pending charge which qualifies that person for inclusion.’ (§ 299, subd. (a).) If a felony conviction redesignated as a misdemeanor pursuant to section 1170.18 is treated as a felony up until the time of redesignation, similar to a wobbler felony conviction under section 17, the defendant would continue to have a past qualifying conviction even after the redesignation. Under the terms of section 299, the defendant would not be entitled to expungement of his or her DNA record.” (In re J.C., supra, at p. 1479.)
We agree with our colleague’s reasoning in this regard and, thus, conclude, like our colleagues, that section 1170.18 should be treated like section 17 for purposes of the DNA Database Act, with the effect that a felony reclassified as a misdemeanor under section 1170.18 remains a qualifying offense under the act, precluding the offender from obtaining additional relief in the form of expungement on the basis of such reclassification. (Accord, Coffey, supra, 129 Cal.App.4th at pp. 821-822 [§ 299, subd. (f), as enacted in 2004, “merely clarified existing law” that a defendant is not entitled to expungement of a DNA record when a wobbler conviction is reduced to a misdemeanor pursuant to § 17].) As stated above, the act is quite clear that a defendant, including a juvenile, becomes subject to the DNA submission requirement upon being “convicted of or pleading] guilty or no contest to any felony offense,” and “regardless of [the] disposition rendered or placement made in the case of juvenile who is found to have committed any felony offense.” (§ 296, subds. (a)(1), (b).) As such, the fact that an admitted felony offense is later reclassified as a misdemeanor does not change the offense’s status as a qualifying offense for purposes of the act.
Moreover, even before its recent amendment, section 299, subdivision (1), expressly stated that, notwithstanding any other law, a judge cannot relieve a defendant of the administrative duty to provide DNA for inclusion in the state’s DNA database. Given this particular language, we decline to read the more general language in section 1170.18, subdivision (k) that an offense reclassified as a misdemeanor must be treated as a misdemeanor “for all purposes” as a legislative grant of authority to a judge to disregard the restrictions placed upon his or her authority by section 299, subdivision (1). (See Coffey, supra, 129 Cal.App.4th at p. 823 [“since the definition and consequence of a ‘misdemeanor’ is a creation of the Legislature, the term ‘all purposes’ merely refers to the purposes delineated by the Legislature. And because the Legislature has determined that a defendant whose sentence is reduced to a misdemeanor under section 17, subdivision (b), must provide DNA samples (§ 296), it cannot be that a defendant is insulated from providing DNA samples merely because his sentence is reduced to a misdemeanor under section 17, subdivision (b)”].) Indeed, the law of statutory interpretation requires the opposite. (See Ni v. Slocum (2011) 196 Cal.App.4th 1636, 1647 [127 Cal.Rptr.3d 620] [The phrase “ ‘[notwithstanding any other *1125 provision of law’ ” generally expresses a legislative intent “ ‘ “to have the specific statute control despite the existence of other law which might otherwise govern” ’ ” and to “ ‘ “declare[] the legislative intent to override all contrary law.” ’ ”].) The law of statutory interpretation also dictates that where, similar to here with section 17, subdivision (b), “legislation has been judicially construed and a subsequent statute on a similar subject uses identical or substantially similar language, the usual presumption is that the Legislature [or the voters] intended the same construction, unless a contrary intent clearly appears.” (In re Jerry R. (1994) 29 Cal.App.4th 1432, 1437 [35 Cal.Rptr.2d 155]; see also People v. Rivera (2015) 233 Cal.App.4th 1085, 1100 [183 Cal.Rptr.3d 362] [“the language in [section 1170.18, subdivision (k)] that a conviction that is reduced to a misdemeanor under that section ‘shall be ... a misdemeanor for all purposes’ is not significantly different from the language in section 17(b), which provides that after the court exercises its discretion to sentence a wobbler as a misdemeanor, and in the other circumstances specified section 17(b), ‘it is a misdemeanor for all purposes: (Italics added.) . . . [I]n construing this language from section 17(b), the California Supreme Court has stated that the reduction of the offense to a misdemeanor does not apply retroactively”].)
Moreover, our interpretation of section 1170.18 is consistent with the goal of promoting harmony among different, but related, statutory schemes if reasonably possible. (See State Dept. of Public Health v. Superior Court (2015) 60 Cal.4th 940, 955-956 [184 Cal.Rptr.3d 60, 342 P.3d 1217].) As mentioned above, both Proposition 47 and Proposition 69 were intended to promote public safety. And while Proposition 47 does indeed serve the goal of reducing penalties for certain nonserious and nonviolent offenders, the electorate, when passing Proposition 69, specifically acknowledged the link between nonviolent convicted criminals and violent crime. To wit, as set forth in Proposition 69’s statement of purpose: “(d) Expanding the statewide DNA Database and Data Bank Program is: [¶] . . . [¶] (2) The most reasonable and certain means to solve crimes as effectively as other states which have found that the majority of violent criminals have nonviolent criminal prior convictions, and the majority of cold hits and criminal investigation links are missed if a DNA database or data bank is limited only to violent crimes.” (Voter Information Guide, Gen. Elec. (Nov. 2, 2004) text of Prop. 69, p. 135.) By interpreting section 1170.18 as redesignating minor’s felony offense as a misdemeanor for all purposes going forward from the date of the court’s redesignation order (and, thus, not for the purpose of determining whether the offense qualifies for DNA submission under Prop. 69), we reconcile any potential tension or inconsistency between section 1170.18, on the one hand, and sections 296 and 299, on the other, while still advancing the measures’ *1126 common goals of promoting public safety, enhancing crime-solving capabilities, focusing prison spending on violent and serious offenses, and maximizing alternatives for nonserious, nonviolent crime. (See Voter Information Guide, Gen. Elec., supra, argument in favor of Prop. 47, at p. 38.)
We hasten to add that, if there was any doubt about the proper interplay between Proposition 47 and the DNA Database Act, it was recently laid to rest by the legislative amendment adding section 1170.18 to the nonexhaustive list of statutes identified in section 299, which, by statutory mandate, bar a trial court from relieving an otherwise qualified person from his or her administrative duty to submit DNA samples. This amendment clarified what was arguably ambiguous in the former statute—to wit, that the redesignation procedure under section 1170.18 does not give rise to a right to relief from the defendant’s DNA submission obligations under section 299. As such, the legislative amendment confirms our interpretation of the statutory framework set forth above that expungement is not part of the relief available to criminal defendants under Proposition 47.[7]
Minor attempts to draw a distinction between the “administrative duty to provide [DNA samples],” referred to in the amended version of section 299, subdivision (1), and the requirement that the Department of Justice DNA Laboratory “expunge DNA . . . samples” under certain circumstances, referred to in section 299, subdivision (e), but not in section 299, subdivision (1). However, the same argument was discussed and rejected by our colleagues in In re J.C.: “The minor argues section 299(f) could not have been intended to affect a court’s duty to order expungement under section 299, subdivision (b) because section 299(f) speaks of ‘relieving]’ a defendant of the ‘duty to provide’ a DNA sample, language that, as the minor argues, *1127 ‘applies to a situation where a person has yet to submit a sample.’ As explained above, while we might agree in the absence of the statutory references to sections 17, 1203.4, and 1203.4a, the inclusion of those statutes makes sense only if section 299(f) is interpreted as precluding expungement when an originally qualifying offense is reduced to a nonqualifying offense in the course of judicial proceedings. We acknowledge the use of the phrase ‘relieve ... of the separate administrative duty to provide’ is not an intuitive way to refer to expungement, but the language has been so understood at least since the issuance of Coffey, over 10 years ago.” (In re J.C., supra, 246 Cal.App.4th at p. 1475.)
We again agree with our colleagues’ reasoning and adopt it for purposes of this case. Under a reasonable reading of section 299, considered in its entirety and as a whole, if a judge is not authorized to relieve a defendant of his or her administrative duty to submit DNA, the judge is not authorized to order the expungement of his or her DNA. (See also Taxpayers to Limit Campaign Spending v. Fair Pol Practices Com., supra, 51 Cal.3d at p. 764 [principles of statutory interpretation require courts to “reconcile or harmonize conflicting statutory provisions in an effort to give effect to all provisions if it is possible”].)
Finally, we turn to minor’s argument that Assembly Bill No. 1492, enacted after entry of the challenged order, cannot apply retroactively to his case because it impermissibly amends section 299. (See Proposition 103 Enforcement Project v. Quackenbush (1998) 64 Cal.App.4th 1473, 1487 [76 Cal.Rptr.2d 342] [“the Legislature cannot indirectly accomplish . . . what it cannot accomplish directly by enacting a statute which amends the initiative’s statutory provisions”].) According to minor, this bill “effectively amend[ed] Proposition 47 by creating a new exception to the treatment of reclassified crimes as misdemeanors.” Or, “[s]aid another way, it authorizes the retention of DNA samples from reclassified offenders—something Proposition 47 prohibits by mandating that reclassified offenses be treated as misdemeanors for all purposes except firearm restrictions.” We again disagree.
As our discussion from above makes clear, Assembly Bill No. 1492 did not amend section 1170.18. Rather, the bill clarified section 299 by adding section 1170.18 to the otherwise nonexhaustive list of statutes in section 299, subdivision (f) barring lower courts from excusing qualifying defendants from their administrative duty to submit DNA. Even assuming the former version of the statute was susceptible to minor’s proposed interpretation (to wit, an interpretation omitting § 1170.18 from the list of statutes delineated therein), the fact that two equally reasonable interpretations exist merely confirms the statute’s ambiguity and, thus, the impetus for its legislative amendment. (See In re J.C., supra, 246 Cal.App.4th at p. 1479 [acknowledging two distinct, yet equally plausible, readings of the relevant statutes *1128 governing DNA record expungement, to wit, one treating a redesignated conviction under § 1170.18 as a misdemeanor from the date of conviction, per Alejandro, and the other treating it as such from the date of sentence recall, per Coffey and § 17].)
Accordingly, we conclude the current version of section 299, subdivision (f), may be properly applied to this appeal regardless of the fact that the juvenile court order under challenge predated its amendment. (E.g., Carter v. California Dept. of Veterans Affairs (2006) 38 Cal.4th 914, 922 [44 Cal.Rptr.3d 223, 135 P.3d 637] [“A statute that merely clarifies, rather than changes, existing law is properly applied to transactions predating its enactment.”]; Negrette v. California State Lottery Com. (1994) 21 Cal.App.4th 1739, 1744 [26 Cal.Rptr.2d 809] [‘“An amendment which merely clarifies existing law may be given retroactive effect even without an expression of legislative intent for retroactivity.”].)
Thus, for all the reasons stated, we affirm the juvenile court’s order barring expungement of minor’s DNA samples from the state database following the reclassification of his offense as a misdemeanor.
DISPOSITION
The juvenile court order denying minor’s request for an order to expunge his DNA records from the state database is affirmed.
Siggins, J., concurred.

 Unless otherwise stated, all statutory citations herein are to the Penal Code.

 According to the probation report, minor broke into an apartment in Concord and stole the resident’s cell phone, wallet and Nintendo game. When leaving the apartment, minor was confronted by the resident, who began assaulting him. In response, minor brandished a knife in self-defense. Because the facts of this incident are not relevant to the sole legal issue raised on appeal, however, we provide no further details.

 On August 17, 2015, the juvenile court set aside the placement order and terminated minor’s probation as unsuccessful.

 There appeal's to be nothing in the legislative history of Assembly Bill No. 1492 explaining the Legislature’s intent with respect to this particular amendment. (See In re J.C.. supra. 246 Cal.App.4th at p. 1472.)

 The Alejandro court reasoned: “Because the statute explicitly addresses what, if any, exceptions should be afforded to the otherwise all-encompassing misdemeanor treatment of the offense, and because only the firearm restriction was included as an exception, the enactors effectively directed the courts not to carve out other exceptions to the misdemeanor treatment of the reclassified offense absent some reasoned statutory or constitutional basis for doing so.” (Alejandro, supra. 238 Cal.App.4th at p. 1227, fn. omitted.)

 A “wobbler” is an offense punishable in the court’s discretion as either a felony or a misdemeanor. (Coffey, supra, 129 Cal.App.4th at p. 812, fn. 2.)

 Minor makes much of the fact that, when amending section 299, the Legislature referenced just one particular' case. People v. Buza (2014) 231 Cal.App.4th 1446 [180 Cal.Rptr.3d 753], review granted February 18, 2015, S223698 (Buza), a decision regarding the proper scope of section 299 currently before the California Supreme Court for review. Section 299, subdivision (g) provides that “[t]his section shall become inoperative if the California Supreme Court rules to uphold the California Court of Appeal decision in [Buza] in regard to the provisions of Section 299 .... as amended by Section 9 of the DNA Fingerprint, Unsolved Crime and Innocence Protection Act, Proposition 69, approved by the voters at the November 2, 2004, statewide general election, in which case this section shall become inoperative immediately upon that ruling becoming final.” As minor notes, the Legislature did not acknowledge, much less purport to overrule Alejandro, the decision discussed above holding that expungement is required when a criminal defendant’s request under section 1170.18 to reclassify a felony offense as a misdemeanor is granted. We decline to read any significance into the Legislature’s silence on this matter. (See People v. Harrison (1989) 48 Cal.3d 321, 329 [256 Cal.Rptr. 401, 768 P.2d 1078] [“The Legislature ... is deemed to be aware of statutes and judicial decisions already in existence, and to have enacted or amended a statute in light thereof.”].) Moreover, Buza is inapposite. There, unlike here, the issue is the constitutionality of section 299 as it relates to expungement of DNA samples submitted by arrestees who are not thereafter convicted of a qualifying crime.